Good morning, your honor. The district court erred in denying the motion to suppress evidence from Jerada Henderson's cell phones. The warrant did not supply probable cause to search those phones because it provided no nexus between the offense alleged and the phones other than the bare statement that evidence may be found on the phones. Nor does the supposed ubiquity of cell is not shielded by the good faith doctrine given that absence of probable cause. With respect to the warrant in this case, I think we need to start there because this warrant is really remarkably bare of any connection between the cell phones and the offense charged. The only mention of cell phones in the warrant comes in attachment B and I'm looking at JA 127 where it states after listing the items to be seized at the very end it says the items listed in paragraphs three through seven may be stored in digital media and that digital media includes a list of things among which are they state though that the Miss Langley who was arrested with illegal drugs told them that my out of state supplier is here. He's got more drugs. He's in my trailer and he's got a gun. Wouldn't it be logical to conclude that if it's an out of state drug dealer that he's not using carrier pigeons or telegrams, he's using a cell phone to communicate? Your Honor, the law permits the district court or the magistrate granting the warrant to make reasonable inferences and fill gaps, but not to make imaginative leaps. If you've got an out of state drug dealer, how is it an imaginable leap that they don't use cell phones to communicate their business? Your Honor, I don't think it's any different from saying anyone else uses cell phones. The issue is whether or not there's a direct connection between this individual and his cell phones. The statement that he is an out of state drug source really does not provide enough of a nexus. It doesn't provide the nexus at all because there are other ways that they could communicate. They could be communicating by landline phone. They could be communicating by mail. They could be communicating in person. Simply saying he's an out of state source. Does that happen in today's world? On this case, I don't think it was a magistrate. Wasn't there a state circuit court judge who signed this warrant? It's a little different than just the magistrate that shows up down at the courthouse. It was a state circuit court judge, Your Honor, but I think your question ultimately wraps in with the issue and you reference in today's world and the use of cell phones. And that's ultimately what the district court relied on in affirming this warrant was the ubiquity of cell phones and saying, well, we ought to be able to recognize that everyone uses cell phones. It's not simply out of state people. Anyone uses a cell phone. That is actually what this court rejected recently. The crime here was involving coordination, right? That seems relevant that a way that people communicate and coordinate is cell phones, right? It's not just, you know, there may be crimes where the fact that the defendant has a cell phone, it's not particularly relevant to searching for evidence. But if you have a potential crime of coordination, you generally are able to look at the sources of evidence of coordination. Well, Your Honor, I think the crime alleged in the warrant was distribution of methamphetamine rather than conspiracy. Yes. But in any case, I think that it would, it stretches imagination to think of almost any crime in which a cell phone would not ultimately be relevant or would not ultimately contain evidence. I think, in fact, there's a court that says essentially that, you know, if you're talking about arson, it's likely that someone's cell phone is going to contain metadata that will show where they were. If you're talking about fraud, it's likely the cell phone will show bank information. Any of this, that's the problem with cell phones, is that they contain vast amounts of data, not only about coordination and communication, but about anything. And this court has recognized in Suero that the ubiquity of cell phones standing by itself is not a sufficient basis to justify a sweeping search for them. That ubiquity is what the district court relied on here. Now, whether this is an offense involving... The district court also knew what was in the warrant affidavit, that what everything Ms. Langley told the officers checked out. He was in the trailer. There were more drugs there. There was a gun there, and he had a holster that fit the gun. Wasn't it logical for them to conclude, and when they went in, he had a cell phone either in his hand or next to his hand? Well, the moment that we judge probable cause, of course, is not after law enforcement has been able to go in and find more evidence. The moment that we judge probable cause is the moment when the warrant is made. At that time, there's remarkably little evidence about who this individual is or why we would believe that his cell phone is likely... There's a substantial basis to believe that a cell phone is likely to contain evidence in this case, other than the ubiquity of cell phones. So apart from that consideration, all the cases that the government cites, even the good faith cases, contain a great deal more information on which a reasonable magistrate and a reasonable officer can base their opinions and their beliefs. Speaking of the good faith cases, assuming there was not probable cause here, why doesn't the good faith exception apply? Because this warrant... The good faith exception is very generous, but it has a floor. There must be some... The warrant must not be completely devoid of probable cause as to the cell phones, and here it is. Now, the government's best case on this is probably United States v. Williams, which is this court's case addressing good faith. But even in Williams, the indicia of probable cause are far greater than they are here. Williams is a case in which they knew, to begin with, who the actual subject of the search was. They knew who Williams was. Here, they don't even know who Henderson is. All they know about him is that he's an out-of-state source who's sleeping in a trailer. They have information about Williams' prior dealings. They know that he's been involved in at least 15 drug-related calls. They know that he's met with other drug suppliers. They have his prior criminal history. Probable cause is a totality-of-the-circumstances test, and so where you have a situation where you may not have a whole lot of information about one aspect of the circumstances, but you have a lot of information about the other, then the district court can reasonably conclude that there is probable cause. In Williams, they had a great deal of information about him. Based on that, the affiant had information that they could draw on, that they could reasonably draw on to say, based on this information, I can reasonably conclude that there is likely to be evidence of the crime sought in the places that I'm seeking to search. But here, we don't have that information. We don't know anything about Mr. Henderson. We have no statement, actually, by the law enforcement officer that cell phones are likely to contain this information. So in every other case in which the government has cited as well, law enforcement isn't even saying that the cell phones are likely to contain this information. They're simply saying they may contain this information. Digital media is capable of containing the information sought, which is hardly surprising because that is what digital media does, is contain information. Saying that digital media is capable of containing the information sought collapses once again into saying everyone has a cell phone. But if this warrant is upheld, then it essentially provides a basis in any case in which someone is suspected of drug trafficking for law enforcement to be able to search their phone. Supreme Court rejected this in Riley. This court has rejected that in the past and said that you need additional information. This court should recognize that as well. Cell phones are unique as the Supreme Court has recognized and as this court has recognized. They contain a great deal more information than homes or than wallets or than other privileged places. In fact, Riley recognized that they essentially stand above homes in terms of the information that the government sought here and that the privacy concerns inherent in cell phones are such that allowing an unfettered search like this really does allow the government to search in any case. Here, the government relied not simply on a photo or on notes and memoranda, which are the kinds of analog information that the warrant requests, but also on the metadata on the photo. Was there a search warrant in Riley? No, that was incident to arrest. Riley was a search incident to arrest, but what the Supreme Court said is that if you want to get into someone's cell phone, you need a search warrant supported by probable cause. Now here, what this... Back to your basic argument, you had a warrant, but there wasn't probable cause. That's correct. I mean, this warrant truly is a bare bones warrant and every other case that the government refers to has more information that allows the finding of probable cause. Whether you're looking at Grossman, where you can look at the individuals, the nexus to the home is based on his suspicious behavior around the home as the place to be Jones, which is another case in which they found probable cause. It's because they found that he was referring to the home. The activities created the nexus in Orozco, which is a cell phone search case. His behavior and his suspicious behavior and the fact that they saw him using the cell phone created the nexus. Here, no one saw a cell phone. No one knew who Mr. Henderson was. There's no statement by law enforcement that anyone knew anything about a cell phone, and this is something that law enforcement could have found. This is not something where law enforcement did their best and just couldn't have gotten this information. Right. All they had to do was ask Ms. Langley how she typically communicated with him and then put that in the search warrant affidavit, but they didn't. Absolutely. The other thing they could have done, which is done very commonly, is they could have gotten a second warrant after they found the phones. Once they know that there are phones and they know where they are and they have additional information that they can make a particularized warrant, they could have gotten a second affidavit for that. They have at least two ways that are very low thresholds that they could have done this right, but granting suppression in this case serves the purposes of the exclusionary rule because it does create an incentive for law enforcement to not be reckless or negligent with respect to obtaining this information. Now, law enforcement, we understand they're working under time constraints. They have to do their best with this, but they can obtain this information. Otherwise, you create a situation in which law enforcement has no incentive to ask the important questions and to investigate. If this warrant stands, then they never have to ask, what information is on the cell phone? How did you communicate with your source? Every time they can simply take the same boilerplate language that was used here, put it on a warrant, and say that provides a sufficient basis for us to conclude that this cell phone will contain evidence. And so this is another situation in which the boilerplate language that the warrant used did not supply anything additional to the case, did not supply anything additional to the warrant. And I've discussed the numerous problems with this, but they're more than typos. They really are an indication that this boilerplate language about even the things to be searched for in which cell phones are an afterthought. And even this boilerplate language does not contain a statement that law enforcement believes the cell phones will contain any information or has any basis to say that the cell phones will contain any information. But even this boilerplate language is insufficient. And that is another reason why a reasonable officer should have known that this warrant affidavit was completely devoid of probable cause because the warrant itself is so defective, that it's not fully filled out, it's missing information, and it's not tailored. Not only is the warrant not tailored to the particular circumstances with respect to Mr. Henderson, it's not even tailored to the affiant making the statements. All right. Thank you very much. You've got some rebuttal time left, Mr. Jones. Good morning, your honors. May it please the court. My name is Jonathan Jones. I'm here on behalf of the United States. Your honors, I'd like to begin with the issues related to the court's recent decision in Suero, which my colleague has referenced a few times. I think Suero makes very clear that the search warrant in this case was appropriate. And the analysis that we're asking this court to do here is consistent with the analysis in Suero. In Suero, the court found that there was an appropriate nexus between the warrant for cell phones because of the nature of the crime and because of the ubiquity of cell phones. Very And that was part of the basis for finding that the search warrant was appropriate. And I would point out that in this case, the likelihood of using a cell phone for this particular crime was greater than in Suero. I would note- In Suero, the crime was sending threats via email. So the crime itself required the use of an electronic device. Here, the crime is- The alleged crime at the time is distribution. So where in the affidavit is there a connection to the alleged crime and the cell phone other than the ubiquity of cell phones and the boilerplate language that the officers purported training and experience led her to conclude that there would be evidence on a cell phone, which her training and experience is also questionable given the clear cut and paste job of this short affidavit. So, Your Honor, beginning first with respect to Suero, it's true that the crime at issue there involved electronic communications. But the crime there was sending a threatening email that was four and a half pages long. And while it is possible that somebody might write a four and a half page email on a cell phone, it is unlikely. In this case, we have a search warrant affidavit that identifies both distribution and conspiracy. And so the likelihood that a drug dealer is using a cell phone to carry out distribution and conspiracy, I think is greater than the likelihood that somebody wrote a four and a half page email on a cell phone. Moving specifically to your question about where in the affidavit there's a specific connection, what law enforcement says is that in her- In the experience of the affiant providing this affidavit- And where was it that she got that training? The training is not specifically identified. Right. And why is it not specifically identified? There's nothing in the record that explains- Because the affidavit is clearly cut and paste and it's just left blank. She says, based on my training and experience obtained and then just nothing. That's correct, Your Honor. The affidavit actually leaves the pronoun he in there, which also indicates this was just a boilerplate cut and paste job. But go ahead. Your Honor, I certainly don't dispute that law enforcement officers will routinely use boilerplate language and that boilerplate language was used here. There's no indication in the record or even any allegation that any of the statements made about her training and experience are inaccurate. And I'll point in particular to this court's opinion- No, just extremely sloppy. Your Honor, I think that the- In order to obtain a search mark to violate someone's privacy. Your Honor, I think that the statements that were made by the investigator in this case were certainly sufficient, particularly in conjunction with the evidence that was provided that they and the other individuals that were involved in the car stop. I'm talking. Can you hear me or am I on mute? I apologize, Your Honor. I can't hear you. I apologize if I've spoken over you. You were. I forgot my question now. What particular information are you saying they gleaned from Ms. Langley that created the nexus here? Your Honor, I think that the information that there was- They knew that Ms. Langley was a drug dealer. She was carrying two ounces of methamphetamine to sell to somebody else. That was in the affidavit. They also learned from her that her source of supply was in her trailer with a gun and that the source of supply was from out of state. I think all of that information would allow a magistrate to make the reasonable inference that the individual in the trailer had a cell phone. I bet everybody in that courtroom has a cell phone somewhere. I don't understand how that's a sufficient nexus and doesn't get into what was cautioned against in Riley and in our opinion in Suero of just relying on the ubiquitous nature of cell phones. What crime wouldn't use a cell phone? Your Honor, it's true that a number of crimes would use a cell phone. I think an example of a crime where evidence from a cell phone wouldn't be likely might be the example in Griffith. This is from the D.C. Circuit where law enforcement was seeking information about a homicide that had occurred a year prior and the individual had been in jail for about 10 months in the interim time. In that situation, I think it might be fair to say that there would not be, or there's not likely to be, evidence related to being- So if somebody's in jail or the information would be over a year old, but otherwise everybody has a cell phone. In a current investigation like this one was, what is the limiting principle? You just say, okay, there's an alleged crime and this particular crime typically uses cell phones, therefore we're going to search the person's cell phone. What is the limiting principle there? Your Honor, I think the limiting principle relates to sort of the first part of what you described and whether there is sort of clear evidence that is involved in criminal conduct. I think in many cases, when law enforcement has clear evidence that somebody is involved in criminal conduct, in a lot of those cases there's going to be probable cause to search any cell phones that they have because of the amount of information that is- That's not a limiting principle, I don't think, because anytime law enforcement suspects someone of being engaged in criminal conduct, they can search their cell phone. That's what I'm hearing you say and that's what I see in this search warrant with the boilerplate language. I don't think I would have had any problem, I know I wouldn't have had a problem with this search warrant had the officer also included that Langley said that she communicated with her out-of-state source via his cell phone in order to set up distributions. In fact, she testified at trial, that's how they did it, that they sent text messages. So, that could have been put in the affidavit and there would have been probable cause. But without it, that affidavit could apply to anybody at any time that an officer suspects of being engaged in criminal conduct, in my view. And your honor, I don't necessarily disagree with your view. What I want to make clear is that I agree that officers certainly could have gathered additional information, put it into the search warrant, and that might have made an easier case in terms of whether there was probable cause. I find it sort of hard to believe that they wouldn't have known at the time they wrote this affidavit that that's how they communicated, that that's how she communicated with him. They just didn't put it in there because this is an extremely sloppy affidavit. So, they didn't make the nexus that was later used in testimony at trial. But what about the good faith exception? Why does it apply here in your view? Your honor, a couple of points with respect to the good faith exception. I think that if what officers are looking at here is that they've got clear evidence from somebody who is a drug dealer that her supplier from out of state is in the trailer, that they've made statements in there. And I recognize that your honor has identified them as sloppy, but they've made statements that in their experience, there are certain kinds of information that drug dealers have on them and that that information may be on a cell phone. Well, I mean, would you file a brief with clear gaps in the sentences and words missing and typos? Or would you think that was sloppy? Your honor, I would not do that if I was filing a brief. I do want to highlight again, as the Supreme Court has explained, and as this court has explained, we understand that law enforcement officers are under time constraints and oftentimes have to move forward with these affidavits very quickly. In Orozco, this court made very clear that affidavit need not dot every I or cross every T or close every inferential. Right. It's just that it's by the third paragraph about the sixth line of the affidavit, that's where the problems begin with leaving out information. And I understand that they're busy and they don't have to dot every I and cross every T, but they certainly should be required to make the requisite nexus to the crime in order to execute a search warrant and invade the Fourth Amendment. But I do want to hear about the good faith exception and how it applies here. And your honor, I mean, beginning with a good faith exception, I think that the information provided in the warrant and that includes the statements from the investigator about her specific training and experience. And I know she doesn't identify where the training came from, but she does explain that she's been involved in a number of different investigations related to drugs and methamphetamine. And so as a result of statements about her training and experience and statements about the facts that they learned from Ms. Chandler and Ms. Langley, I think it would be reasonable for an officer to believe that there was probable cause, even if this court finds that there was not. More importantly, I want to highlight that not only did the circuit court find that there was probable cause and issue a warrant, but the district court also found that there was wouldn't, is part of your argument, the fact that the warrant was issued by a circuit judge, some indication of good faith reliance on it by the officers? I think it's primarily the fact that it was not just the circuit court, but that the district court also found that there was not just good faith, but probable cause. No, but by the time the district court got involved, they had already relied on it. I'm saying that they relied on a warrant that was issued by a state circuit judge. So it seems to me like that would tip in their favor in terms of the good faith exception. Yes, I agree that that tips in their favor. I'm actually agreeing with you this time. Yeah, and I agree. I agree that that tips in their favor in terms of the good faith exception. I do want to point out that in terms of the district court judge that did come after they already relied on the search warrant, but because this is a retroactive look at what they did and whether it was objectively reasonable, the fact that the district court after adverse briefing also looked back and thought it was objectively reasonable and thought that there was probable cause suggests that it was objectively reasonable for the officers to have relied on it as well. Oh, okay. I understand what you're saying. And we've cited a number of cases where this court has specifically relied on the fact that multiple judges and multiple courts have found probable cause to find that good faith is and in Leon itself, the Supreme Court very specifically identified the fact that if you have disagreement among other judges about whether there is probable cause, that would support a finding of good faith. In this case, the only other judges to actually look at this found that there was probable cause. So we think that there's not a way really analytically to find or determine that the law enforcement officers would have known that there was obviously not probable cause in this case. I do want to circle back briefly, I think, on some of the concerns and this relates, to some of Judge Thacker's concerns and some of the points that were raised by my colleague, just in terms of how this relates to Riley and the concerns about all of the private information that is stored on cell phones. In particular, I want to point to this court's decision in Orozco and some of the comments that were made there, and this is specifically in footnote nine, where this court explained that Riley recognized that because of all of the private information that is on a cell phone, a warrant is absolutely necessary. But the corollary to that is that because there was so much information about personal conduct, information about people's private activities, is going to make it more and more likely that there will be probable cause to search a cell phone. The standard for probable cause is a fair probability that there will be evidence of criminal conduct, and this court has explained the probable cause is a common sense analysis. Baking all of that in together, it's reasonable that in situations where law enforcement has clear evidence that people are engaged in criminal conduct, in a lot of those situations, law enforcement will also have probable cause to search their cell phones. Unless there are additional questions related specifically to the search warrant in this case, I'm happy to move on to questions about the jury instruction or the sentencing here. Any further questions, Judge Thacker? No, thank you. All right, thank you very much, Mr. Jones. Ms. Trodden, you've got some rebuttal time. Thank you, Your Honor. I'd like to address a few of the points that my colleague made. First, with respect to his argument that there's not likely to be, as a Griffith situation, for example, as one in which there wouldn't be likely to be evidence on a cell phone. The problem with that and with relying on Griffith is that the officers knew in Griffith that he had been locked up for a year. They didn't have that underlines, again, the absence of evidence in this warrant where they simply knew nothing, not even the identity of the out-of-state source. They didn't know how long he'd been coming here, if this was his first time here, how much he had brought, how he had contacted Ashley. They knew none of that in the warrant. Judge Thacker raises the question that it's hard to but this isn't a Mackenzie Goode type situation. We didn't have a hearing on this warrant. The judge decided this on the four corners of this warrant, so this is what we have. That corresponds a little bit, I think, to the fact that the warrant is not only for distribution crime but also for conspiracy. It says both. That's based on communication, right? You can conspire with someone by agreeing with them. One of the principal ways we agree with people is by and she says, my out-of-state supplier is here in my trailer and I have drugs from him. Then a court says, that's a good reason to think that there was a conspiracy. That suggests there's some communication, right? Maybe the officers knew more about the communication they didn't say in the affidavit, but it suggests that they're allowed to look for evidence of communication, right? It certainly suggests that they're allowed to look for, well, they're allowed to look, their probable cause can't be broader than what's in the warrant. Their warrant can't be broader than probable cause. Excuse me, I inverted that. And thank you for correcting me as to the evidence of the conspiracy allegation as well. But with respect to your question about whether or not there's evidence of communication or they can look for evidence of communication, again, I think that that comes back to the uses of cell phones and the frequency that which cell phones are used by everyone. The government says that this is a situation in which, because it's this type of drug trafficking crime, that cell phones are more likely to be used than they would be in, say, a threats case. And I think that in some ways that assumes the point that the government is trying to prove. Courts over the years have talked a great deal about how cell phones are tools of the trade of drug dealers. And I think we need to pause and re-examine that in light of the march of technology that the court has referred to. If we say cell phones are the tools of the trade of drug dealers, are we saying that having cell phones means it's more likely that someone's a drug dealer? That everyone's a drug dealer because we all have cell phones. Exactly. If we say that... It sounded to me like you and your colleague on the other side were actually agreeing a lot about how relevant cell phones are to a lot of crimes. You pointed out especially GPS data, right, like location data. The cell phone itself may have nothing to do with how you committed the crime. You both seem to be agreeing that cell phones and what's on them is highly relevant to lots of crimes. But the government says that's why you have to have a warrant. It's just like searching someone's home, right? If someone committed a crime, there's probably going to be some evidence at their home. And I think it would take you to be saying that that's a reason why even a warrant is not enough. Well, I said that... That's what I'm saying, Your Honor. Yes. I wouldn't say that a warrant isn't enough, but that the warrant has to be a good warrant and it has to be supported by a probable cause. Simply saying cell phones contain information isn't probable cause because of course they contain information. That's not what the affidavit said, right? It said, I've done this for five years, lots of meth investigations. Drug dealers often have contacts and communications and lists of people they sell to and phone numbers. And you often find those sorts of things on a cell phone. It says everything except that last part, Your Honor. Well, it has a list of things that are relevant. And it says some of these things may also be found on phones, whatever the list of devices is. And I see my time is up. May I continue? That would be great. That statement as to whether they may often be found versus whether they're capable of being found or whether as the warrant says they may be found is a significant distinction here. And that is the difference between the nexus, the substantial basis and the existence of probable cause and simply a bare chance, a bare probability. So for these reasons, we would ask the court to vacate this decision and I'll stand on the briefing as to the other errors raised. All right. Thank you very much. We'll come down and recounsel and then move on to our next case.
judges: G. Steven Agee, Stephanie D. Thacker, Allison J. Rushing